## TITSWORTH *vs.* WINNEGAR.

Warehousemen are bound, like all bailees who receive a benefit from the bailment of goods, to exercise ordinary care and diligence, and are responsible only for ordinary neglect.

The basis of the claim against a warehouseman for neglect in the care of goods, is that he is in possession of the goods as a depositary for hire. It is in respect to this right to receive compensation for storage, that he is liable for injury to the goods, or their loss in consequence of, or arising from, his neglect.

A carrier of goods by canal, when within about a mile and a half of the place of delivery, with the goods, presented the bill of lading to the warehouseman to whose care the goods were consigned, and informed him that his boat could proceed no further, on account of the ice in the canal, and requested the warehouseman to pay his charges for freight. The latter thereupon paid such charges, and gave a receipt on the shipping bill, for the goods, and the boat was left in the charge of a third person. Subsequently the owner paid the warehouseman his charges on the property, and his advances to the carrier for freight. The goods, while remaining on the boat, were

damaged by water. *Held,* that when the warehouseman's charges and advances for freight were paid by the owner, the latter was entitled to take immediate possession and control of the goods, and they were not, after that time, subject to any lien or claim of the warehouseman for storage, or other services, nor was he liable for any loss or damage happening to such goods. *Held, also,* that there was no consideration for any contract by the warehouseman to take care of the goods, and none could be implied. That there was no duty, on his part, to take care of the property, because there was no assumpsit to pay for such care, and no lien in his favor could exist upon property remaining in the possession of the carrier.

ON the 28th day of November, 1861, the plaintiff shipped at Syracuse, N. Y. on board a canal boat, a quantity of salt in bags and barrels, consigned to J. E. & M. Titsworth, Mount Morris, to the care of the defendant, who was at the time a warehouseman at Mount Morris. The captain of the boat carried the salt as far as a place called Ayrault's landing, where the boat was frozen in the canal by the ice, and it became impossible to go farther until the opening of navigation in the spring. The captain of the boat called on the defendant and stated to him that he had the salt on board of the boat, one and a half miles from Mount Morris, and could not get any further. The defendant then paid the captain his charges, and gave a receipt on the shipping bill, as follows: "Received and paid. Charged Dec. 3, 1861. 300 bgs. 14 ℔. sacks, 22 bgs. 56 ℔. coarse sacks, 3 left in boat. 300 bls. left in boat not counted." Which charges the plaintiff afterwards repaid to the defendant, with the cartage from the boat to the warehouse. The salt was never delivered at the warehouse of the defendant in Mount Morris, nor nearer than one and one half miles from said warehouse; and soon after the receipt was given, the salt was damaged on board of the boat, by water. The plaintiff brought an action before a justice of the peace, and recovered a judgment for $200 damages, besides costs. The defendant appealed to the county court of Livingston county. On the trial in that court, at the close of the plaintiffs' testi-

mony, the defendant moved the court for a nonsuit on the grounds: 1st. That the defendant did not assume the control of the salt as warehouseman. 2d. That the carrier had not performed his contract, and was not discharged from his contract by the defendant's receipt, but was still liable; which motion was denied by the court, to which ruling and decision of the court, the defendant excepted.

The court charged the jury:

1st. That taking charge of a part of the consigned goods and paying charges on the whole made him, the defendant, responsible as warehouseman for the whole property, and he was bound to exercise in regard to it such care as a prudent man would do in regard to his own property.

2d. That a loss having been shown, it was for the defendant to show that it did not occur through his negligence.

3d. That the consignment to him of the goods was a request to take care of them as warehouseman, and gave him a right to collect compensation for his services.

4th. That the taking charge of the goods at the point where they were left, fixed his responsibility, the same as if they had been delivered at his warehouse, and that the receipt given by him for the goods, discharged the carrier.

To the above charge, and to each and every proposition so submitted, the defendant excepted.

The defendant then requested the court to charge the jury that the defendant, not having the property at the place of destination, and not having received any instructions in reference to it, was not liable as a warehouseman. The court refused so to charge, to which the defendant excepted.

The defendant also asked the court to charge the jury that he, the defendant, not making any charge for storage, and not being entitled to make any charge for storage, he was not liable for damages. The court refused to so

charge, to which decision and refusal the defendant excepted.

The defendant further asked the court to charge the jury that if they believed that when the defendant gave the receipt he gave it at the request of Donnelly, (the captain of the boat,) and with the understanding that the salt would be safe on the boat until they could advise the plaintiff of its condition, the defendant was not liable as warehouseman. The court refused so to charge; to which decision and refusal the defendant excepted.

The defendant further asked the court to charge the jury that having receipted the salt "on the boat," and not having undertaken any charge of it, or agreed to do any thing with it, the defendant was not liable. It was the same as though the defendant had receipted the property from the plaintiff himself, instead of receiving it from the carrier, who was the plaintiff's agent. The court refused to so charge the said jury, but instructed them that if they found that no damages occurred to the salt after the plaintiff had seen the salt on the boat, and paid the charges, the jury might consider such inspection and payment as evidence tending to show the plaintiff's satisfaction with the mode of storage, and if they found he had ratified, the defendant would not be liable; and the defendant excepted to the said refusal to charge as aforesaid.

The jury found a verdict in favor of the plaintiff for $200 damages; and from the judgment entered thereon, the defendant appealed to this court.

*McNeil Seymour*, for the appellant. I. The plaintiff should have been non-suited upon the trial, for the reasons stated. No cause of action had been made out by the plaintiff. The plaintiff had made no contract with the defendant in relation to the salt. The salt in question had been delivered to the captain of the boat, by him to

be conveyed to the village of Mount Morris and left in the care of the defendant, at Mount Morris. The agreement was made by the plaintiff with the captain, without any limit as to the liability of the captain. The defendant had no authority and no power to alter, change or qualify this agreement, or release the carrier from its strict performance. Aside from the act of the plaintiff, the carrier could not be released or excused from the non-performance of his contract, except by the interposition of the "vis major." The freezing of the boat in the canal at a distance of twenty, or even ten miles from Mount Morris, might be such an interposition, but still the liability of the carrier would continue, and it would then become his duty to take care of the salt and complete his contract as early as possible. (*Bowman* v. *A. T. & E. M. Teall*, 23 *Wend.* 306.) But in the case at bar he was not released from complying with his contract, during even the suspension of navigation. The boat was detained by the ice within a mile and a half of its destination. The contract was made on the 28th November; the carrier assumed to deliver the salt notwithstanding the risk of the season; the chances of being frozen in by the ice, &c. If under these circumstances he could have substantially complied with his contract, or in any way have delivered the salt in Mount Morris, he was bound so to do. The rule as adopted by the Court of Appeals is, "That the non-performance of a contract by a common carrier is not excused by the act of God, where it may be substantially carried into effect, although the act of God makes a literal and precise performance of it impossible." (*Williams* v. *Vanderbilt*, 28 *N. Y. Rep.* 217.) The carrier is bound to deliver goods entrusted to him to the place where they are addressed, and if he delivers them elsewhere an action lies against him. (*Stephenson* v. *Hart*, 4 *Bing.* 476.) The carrier is liable until the goods are delivered and received by the consignee. (*Goold* v. *Chapin*, 20 *N. Y. Rep.* 259.

*McDonald* v. *The Western Railroad Corporation,* 34 *N. Y. Rep.* 497.)

II. The carrier not having been discharged, could any act of the defendant release him from full performance? The defendant is sought to be charged in this action as a warehouseman; he could have, therefore, such authority and power, only, over the property as a warehouseman could have; this authority and power does not include the right to release the carrier from the performance of his contract. The liability of the warehouseman could not commence until the liability of the common carrier had ceased. Both cannot, at the same time, be responsible. The liability of the one implies the freedom from liability of the other. Suppose Donnelly had chosen to leave the salt in care of another person living near where the boat was left, and this person had given just such a receipt as that given by the defendant; can it be pretended that this receiptor would be liable to the plaintiff at all? Much more that he would be liable as a warehouseman. He takes charge of the salt where it is, *on the boat,* and undertakes to do nothing more than that it shall receive no injury further than may come from the situation in which it is left. He would not be liable to the plaintiff at all; for there would be no privity of contract. He could only be made liable to the carrier for what he agreed to do. The fact that the defendant, who keeps a warehouse in Mount Morris, gave the receipt in question, does not change the principle. The receipt is not a warehouseman's receipt. "A warehouseman is a person who receives goods and merchandise to be stored in his warehouse for hire." (1 *Bouv. Inst.* 406, § 1011.) "His liability commences as soon as the goods arrive, and he applies the crane to take them into his warehouse." (*Id.*)

Had the plaintiff brought this action against the carrier, can it be pretended that this receipt would have been a defense for him? Certainly not. (*Bowman* v. *Teall, above re-*

*ferred to.*) If the warehouseman can discharge the carrier from the performance of his contract by a receipt like the one in this case, then one common carrier can release another from the performance of his contract made with other persons.

As the act of the defendant did not and could not discharge the carrier, and as his conduct in relation to the property was free from blame, and as he made no contract, neither intended to make any, charging himself with the care of the salt, how can the plaintiff maintain this action? The principle of adoption has no application to this case, for there can be no pretense that the defendant assumed to act as a common carrier, nor does the plaintiff by this action seek to charge him as such. The complaint makes him a *warehouseman*, and charges him only with a warehouseman's liability.

III. By the terms of this receipt given by the defendant, he clearly intended to limit, and did limit, his liability. He does not give the usual warehouseman's receipt; does not describe the property or count it; but receives it "on board of the boat not counted," and so expresses himself in the receipt. Suppose, under such circumstances as attend the case, the plaintiff refusing to pay storage, the defendant commences an action therefor, could not the plaintiff justly answer, that the defendant did not store the salt at all, that it was still on the carrier's vessel, and the carrier's contract was unperformed? By the receipt given, the defendant clearly intended to assume no liability or responsibility in regard to the salt. He is not bound to remove the salt from the boat, or draw it from the boat to Mount Morris, or do any other act or thing in relation to it except to leave it on board of the boat. He cannot in any manner be an insurer of the property.

IV. Removing a portion of the salt from the boat to the defendant's warehouse did not make the defendant

Titsworth *v.* Winnegar.

liable for what was not removed. If the propositions already made are correct, this will follow as a corollary.

V. Nor does the payment of the freight by the defendant to the carrier in any manner affect the question. The carrier had not performed his contract, as we have shown, and was not entitled to the freight. The payment was voluntary by the defendant and he could never have recovered it from the plaintiff; if otherwise, such payment could not alter facts; it would be strange indeed if the defendant's attempt to oblige the plaintiff should be so construed as to make a canal boat a warehouse, and the defendant liable for its improper construction for such purposes; or, if a warehouse, that the defendant's receipt made him liable to remove the salt therefrom to some other place or to the bank of the canal.

*Vanderlip & Smith,* for the respondent. I. The payment of the charges of the carrier by the defendant, the taking a part of the goods consigned, and receipting for the whole, made him liable as a warehouseman. Leaving part on the boat did not relieve him from responsibility, but made him responsible for the safety of the boat as a place of storage. If the captain did agree to take care of the salt, he then became the agent of the defendant, his duty and responsibility as a carrier having ceased when the consignee receipted the bill of lading.

II. The defendant is estopped from denying his liability as a warehouseman. He paid the charges on all the property, gave the plaintiff notice that the salt was there, and that he had paid the charges, and demanded their repayment. When the plaintiff came to his warehouse and went to look at the salt, he did not inform the plaintiff that there had been water in the boat, although he knew the fact, but demanded and received his charges, including pay for carting a portion of the salt from the boat to his warehouse. The plaintiff acted upon this state of facts,

by paying the entire bill. It makes no difference that the defendant made no charge for storage. He was entitled to demand it and could have collected it.

III. A warehouseman is bound to use such care in relation to property entrusted to him, as a prudent man would exercise in relation to his own property. (*Platt* v. *Hibbard*, 7 *Conn. Rep.* 497. *Knapp* v. *Curtis*, 9 *Wend.* 60. *Schmidt* v. *Blood*, *Id.* 268. *Powers* v. *Mitchell*, 3 *Hill*, 545. *Arent* v. *Squire*, 1 *Daly*, 347.) Here the property was left upon an old boat that was leaky, and with no one left in charge of the salt, the water remaining in the canal for a week or ten days after the receipt of the property; and the only evidence upon the point of want of care is that of the captain as to the condition of the boat, and of the plaintiff that it was not prudent to leave it there. This testimony was not disputed.

The court was right, therefore, in refusing to nonsuit the plaintiff, and the exceptions to his charge, and to his refusal to charge as requested by the defendant, were not well taken.

*By the Court*, E. DARWIN SMITH, J. The defendant is sued as a warehouseman. Warehousemen are bound, like all bailees who receive a benefit from the bailment of goods, to exercise ordinary care and diligence, and are responsible only for ordinary neglect. The salt, for the loss of which the defendant is sued, was confessedly never received by the defendant at his warehouse, never was *in* his warehouse, or stored by him in any buildings or place provided by him for the receipt and storage of property. The consignment of it by the bill of lading was a request to him to receive it in store for the owner, at his place of business at Mount Morris, where it was the duty of the carrier to deliver it. When the captain of the canal boat, in charge of the salt, presented to the defendant the bill of lading and informed him that his boat had arrived within about a mile and a half of Mount Morris

Titsworth *v.* Winnegar.

and could come no further, for the ice in the canal; and requested the defendant to pay his charges for the freight, the defendant was under no obligations to receive the property or pay such charges. The receipt indorsed on the bill of lading, and the other proofs, show that he did, however, so far receive the salt where it was, as to take possession of the bags of salt and remove them from the boat to his warehouse and pay the captain's bill for the freight of the whole quantity of salt, leaving in the boat the three bags and three hundred barrels of salt, not counted, as the receipt states. By reason of the consignment to him in the bill of lading of the salt, the receipt and removal of a part of it to his warehouse and the payment of the whole freight to the captain, upon his avowal that he wanted to go home and should leave his boat there with the salt in it until spring, I think the defendant so far acquired a special interest in, or lien upon all of the said salt, that if nothing else appeared he might perhaps be deemed to have possession and control of the same, after the captain left the boat, so far as to be responsible for that degree of care in respect thereto, which warehouse-men or depositaries for hire are bound to exercise over property in their possession. But when the plaintiff himself came to Mount Morris and found the three hundred barrels of salt remaining aboard the canal boat, where it was left by the carrier, and after having seen it and found it was all right, paid the defendant his charges in respect to the salt received, and his advances of freight to the captain, the condition of things was entirely changed. The defendant's lien upon the property for his advances to the captain was then discharged. The plaintiff, as owner of the property, was then entitled to take immediate possession and control of the property. It was not, after that time, subject to any lien or claim of the defendant for storage or other services. It was not in his custody, or possession, or care, so as to entitle him to make any charge

in respect to it for storage or otherwise. The boat in which this salt was then remaining belonged to the carrier who had not fully discharged his duty in respect to said salt. It would have been his duty on the opening of navigation in the spring, as soon as he was able to do so, to transport the said salt to its original destination at Mount Morris and deliver it, in fact, to the defendant at his warehouse. For this service he had been paid. The defendant did not hire this boat for the winter for the storage of the salt, or acquire in any way, that I can see, any control or possession of it for the storage of said salt during the winter or otherwise. The account between him and the plaintiff was closed in respect to said salt when the latter paid his charges in respect to it, in full. The boat captain testified that he could not get to Mount Morris with his boat, because the canal was frozen. The canal boat was not left in charge of the defendant, but the captain testified that he left it in charge of a man named Frettenburgh, who lived on the opposite side of the river from Mount Morris. The defendant therefore had no possession of, or control of, the boat during the winter. The basis of the claim against a warehouseman for neglect in the care of goods is that he is in possession of the goods as a depositary for hire. It is in respect to this right to receive compensation for storage that he is liable for injury to the goods, or their loss, in consequence of, or arising from his neglect. Here there was no such right. No storage was paid to or claimed by the defendant for the salt remaining in the boat, and none could legally be demanded or recovered by the defendant. The liability of warehousemen rests upon contract implied in law. Here there is no consideration for any contract to take care of this salt, and none can be implied. There was no duty to take care of the salt, because there was no assumpsit to pay for such care, and no lien could exist upon property remaining in the possession of the carrier.

If these views are correct, the defendant is in no way responsible for the loss of or injury to the salt in question, and several of the exceptions taken to the charge of the judge, and to his refusals to charge as requested, are well taken, and the judgment should be reversed and a new trial granted in the court below, with costs to abide the event.

Judgment reversed.